IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRST COMMONWEALTH BANK *and* FIRST COMMONWEALTH FINANCIAL CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 14-19 Magistrate Judge Maureen P. Kelly |
| ST. PAUL MERCURY INSURANCE COMPANY, | ) ) ) | Re: EFC No. 11 |
| Defendant. | ) | |

## **OPINION AND ORDER**

**KELLY, Magistrate Judge**

Plaintiffs First Commonwealth Bank and its parent First Commonwealth Financial Corporation (collectively, "Plaintiffs"), bring this contract action against Defendant St. Paul Mercury Insurance Company ("Defendant"), alleging that Defendant breached the terms of the liability insurance policy it issued to Plaintiffs by refusing to provide coverage.

Presently before the Court is Defendant's Motion Pursuant to Federal Rule of Civil Procedure 12(b)(6) to Dismiss Plaintiff's Complaint ("the Motion"). ECF No. 11. For the reasons that follow, the Motion will be denied.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, on or about August 31, 2012, one of Plaintiffs' clients was "the victim of malware (i.e. malicious software) that allowed an unknown third party to access the [client's computer] systems." ECF No. 1-2, ¶ 10. The unknown third party was then able to obtain the client's Senior Vice President's on-line banking user name and password for the client's bank accounts with Plaintiffs. Id. Plaintiffs allege that, with access to that information, the unknown third party initiated three unauthorized wire transfers. The first occurred on August

31, 2012, whereby the amount of $2,158,600 was transferred from the client's account to an account in Krasnodar, Russia (the "Russian Wire"). Id. at ¶ 11. The second unauthorized transfer occurred on September 4, 2012, whereby the amount of $76,520 was wired to a bank in Upper Darby, Pennsylvania (the "Philadelphia Wire"). The third unauthorized transfer also occurred on September 4, 2012, whereby $1,350,000 was wired to a bank in Belarus (the "Belarusian Wire"). Id. at ¶¶ 12–14. Plaintiffs allege that they were unaware that the wire transfers were unauthorized or fraudulent when they occurred. Id. at ¶ 15. On the afternoon of September 4, 2012, however, the intermediary bank for the Russian Wire notified Plaintiffs that the Russian Wire appeared to be fraudulent. Id. at ¶ 16. Plaintiffs were subsequently able to recover the $76,520 that constituted the Philadelphia Wire, but not the amounts from the Russian or Belarusian wires. Id. at ¶ 19, 30.

Thereafter, between September 6, 2012 and September 8, 2012, Plaintiffs' client allegedly made several demands to Plaintiffs to immediately refund/credit the substantial funds that had been withdrawn/debited from the client's account due to the Russian and Belarusian Wires. Id. at ¶ 20. Consequently, on September 8, 2012, Plaintiffs refunded the amount of $3,508,600 to the client's account using Plaintiffs' own funds. Id. at ¶¶ 17–20, 23. Plaintiffs subsequently notified Defendant of the loss on October 3, 2013, and sought to recover the funds under a liability policy ("the Policy") Defendant had issued to Plaintiffs. Id. at ¶¶ 24-26. Defendant, however, has refused to provide coverage stating that, by refunding the monies to their client without Defendant's prior consent, Plaintiffs relieved Defendant of its obligation to provide coverage under the terms of the Policy. Id. at ¶ 28.

Plaintiffs filed the instant Complaint in the Court of Common Pleas of Indiana County, Pennsylvania, on December 4, 2013, bringing a single count against Defendant for breach of

contract. ECF No. 1. On January 3, 2014, Defendant removed the case to this Court based on diversity. Id. On April 25, 2014, Defendant filed a Motion Pursuant to Federal Rule of Civil Procedure 12(b)(6) to Dismiss Plaintiffs' Complaint. ECF No. 11. Plaintiffs filed a Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 15, on May 28, 2014, and on June 17, 2014, Defendant filed a Reply Brief in Support of Motion to Dismiss. ECF No. 17. Having requested, and been granted, leave of Court to file a sur-reply, Plaintiffs filed a Sur-Reply in Opposition to Motion to Dismiss on June 25, 2014. ECF No. 20. Accordingly, the Motion is ripe for review.

## II.     STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Publ. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

**III. DISCUSSION**

It is undisputed that the Policy that Defendant issued to Plaintiffs contains a Defense and Settlement provision which, in pertinent part, states that:

> [t]he Insureds agree not to settle or offer to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation, admit any liability, voluntarily make any payment or confess or otherwise agree to any Damages or judgments with respect to any Claim covered by this Policy without the Insurer's written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation, admitted liability, voluntary payment, or confessed or agreed Damages or judgment to which it has not consented.

ECF No. 1-2, p. 50. Defendant argues that because Plaintiffs voluntarily reimbursed their client for the unauthorized transfers without Defendant's consent, Plaintiffs are in breach of the Defense and Settlement provision of the Policy and thus Defendant cannot be held liable to Plaintiffs for the monies they paid to their client.

In response, Plaintiffs argue that because they have not alleged in the Complaint that they voluntarily credited the amount of the wires in question to their client and have alleged that they had no valid defense to their client's demands and that they were obligated by law to refund the monies, that that the Court may not consider Defendant's argument because it requires the Court to consider facts that have not been alleged, and/or are contrary to the facts that have been alleged, in the Complaint. The Court disagrees.

4

As Plaintiffs acknowledge, in deciding a motion to dismiss "a Court must look only at the facts alleged in the Complaint *and attachments*." ECF No. 15, p. 4 (emphasis added). See Ickes v. Flanagan, 2008 WL 859183, at *1 (W.D. Pa. Mar. 31, 2008), *quoting* Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 n. 2 (3d Cir. 1994) ("[i]n addition to the allegations contained in the pleadings, the Court may also review "matters of public record, exhibits attached to the complaint and items appearing in the record of the case").

Here, Plaintiffs have attached the Policy to their Complaint. The Court therefore may consider the Policy in its entirety which includes the Defense and Settlement provision and the voluntary payment restriction.[1] Thus, the fact that Plaintiffs have not specifically alleged in the Complaint that the payment they made to their client was voluntary is of no moment. Indeed, just as a plaintiff with a legally deficient claim cannot survive a motion to dismiss simply by failing to attach a dispositive document on which it relied, a plaintiff with a legally deficient claim cannot ignore a potentially dispositive portion of a document it has attached to the complaint in order to survive a motion to dismiss. See Goodwin v. Elkins & Co., 730 F.2d at 113.

This notwithstanding, having reviewed the allegations in the Complaint as well as the Defense and Settlement provision in the Policy, this Court finds that Defendant's Motion is properly denied. Not only have Plaintiffs stated a claim for breach of contract on the face of the

---

[1] Moreover, even if Plaintiffs had not attached the Policy to the Complaint, it would still be proper for the Court to consider it since Plaintiffs' claim is based on the Policy. See Ickes v. Flanagan, 2008 WL 859183, at *1, *quoting* Steinhardt Group v. Citicorp, 126 F.3d 144, 145 (3d. Cir 1997) ("in deciding a rule 12(b)(6) motion, the Court may review 'undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document'"). See also Goodwin v. Elkins & Co., 730 F.2d 99, 113 (3d Cir 1984) (Becker, J., concurring) (undisputedly authentic documents not formally attached to the complaint are properly considered where the allegations in the complaint are based on those documents; otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied).

5

Complaint, but the language in the Defense and Settlement provision does not alter that conclusion.

As previously discussed, under the terms of the Defense and Settlement provision, Defendant will not be held liable under the Policy if the insured makes any *voluntary* payments to which Defendant has not consented. Plaintiffs, however, have alleged in the Complaint that they were required by law to refund their client under 13 Pa. C.S.A. § 4A204(a), and has argued in their brief in opposition to the Motion that the payment therefore was not voluntary.[2]

Citing to another portion of the Policy which states that Defendant has "the right and duty" to defend claims brought against Plaintiffs and to Merriam-Webster's Dictionary which defines "voluntary" as "proceeding from the will or from one's own choice or consent," Defendant argues that because the Policy provided Plaintiffs with the choice not to pay their customer and to demand that Defendant defend against the client's claim, Plaintiffs necessarily made the payment to their client voluntarily. ECF No. 17, p. 2. See ECF No. 1-2, p. 51. The fact that Defendant has the right to defend claims brought against Plaintiffs and that Plaintiffs may demand that Defendant provide that defense, however, is not dispositive of whether Plaintiffs' payment to their client was voluntary.

According to Black's Law Dictionary, "voluntary" is defined as "[u]nconstrained by interference; not impelled by outside influence." BLACK'S LAW DICTIONARY 1806 (10th ed.

---

[2] Section 4A204 provides, in relevant part, that:

**Refund of payment and duty of customer to report with respect to unauthorized payment order**

**(a) General rule.--**If a receiving bank accepts a payment order issued in the name of its customer as sender which is not authorized and not effective as the order of the customer under section 4A202 (relating to authorized and verified payment orders) or not enforceable, in whole or in part, against the customer under section 4A203 (relating to unenforceability of certain verified payment orders), the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund.

2009). It is difficult for the Court to find that the mandate of 13 Pa. C.S.A § 4A204 is not an outside influence that interfered with the restrictions imposed upon Plaintiffs under the Policy. Thus, the Court cannot agree with Defendant that Plaintiffs' payment to their client was voluntary under the terms of the Policy. See Fed. Ins. Co. v. Purex Industries, Inc., 972 F. Supp. 872, 886 (D.N.J. 1997) (finding that the voluntary payment exclusion did not apply where the insured was obligated to comply with the Environmental Cleanup Responsibility Act, under which the payment of compliance costs was mandatory, not voluntary). See also City of Lafayette, La. v. Louisiana Power & Light Co., 435 U.S. 389, 443 (1978) (Blackmun, J., dissenting) (noting that conduct required by state law was involuntary). Indeed, Defendant does not discuss 13 Pa. C.S.A § 4A204 or Plaintiffs' lack of discretion to reimburse its client in either its opening brief or in its reply brief.

Moreover, the cases upon which Defendant relies are easily distinguishable. See Nationwide Mut. Fire Ins. Co. v. Nova Real Estate LLC, 2011 WL 721905 (E.D. Pa. Mar. 1, 2011); Essex Ins. Co. v. Liberty Mut. Ins. Co., 2010 WL 4751583 (E.D. Pa. Nov. 23, 2010); E.L. Conwell & Co. v. Cont'l Ins. Co, 1989 WL 8086 (E.D. Pa. Jan. 31, 1989). These cases merely stand for the proposition that voluntary payment provisions in liability policies are enforceable and that when an insured takes it upon itself to settle a claim without notifying the insurer, the insurer is no longer liable under the terms of the insurance policy. None of these cases, however, involve a bank's legal and statutory obligation to refund a client when an unauthorized wire transfer has been made or any other situation where the insured's act of paying a claim was compelled by law or other outside influences. As such, the cases cited by Defendant do not provide the basis for finding that the payment made by Plaintiffs in this case was voluntary.

## IV. CONCLUSION

For these reasons, Defendant's Motion Pursuant to Federal Rule of Civil Procedure 12(b)(6) to Dismiss Plaintiff's Complaint is properly denied. Accordingly, the following Order is entered:

AND NOW, this 6th day of October, 2014, upon consideration of Defendant's Motion Pursuant to Federal Rule of Civil Procedure 12(b)(6) to Dismiss Plaintiff's Complaint, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, Defendant's Reply Brief in Support of Motion to Dismiss, and Plaintiff's Sur-Reply in Opposition to Motion to Dismiss,

IT IS HEREBY ORDERED that Defendant's Motion, ECF No. 11, is denied.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record Via CM-ECF